# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Cause No. 4:22-CR-00055 RLW |
| v. | ) | |
| | ) | |
| JARED MICHAEL DIEHL, | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

*"A complex problem cannot be solved unless we understand it deeply ... If we truly understand the problem and know how to manage it, it will become really easy."* Erno Rubik

Jared Diehl has prided himself on solving complex problems. He found a love for solving Rubik's cubes at a young age and was so good at it he competed in competitions. Jared is socially awkward, suffering from Asperger's syndrome, but he is extremely bright. He studied computer science and mathematics in college. After graduating Summa Cum Laude, he started working as a software engineer making $72,000 right out of college with only a bachelor's degree. He is an expert computer coder. At 24 years old, Jared was a trusted software engineer with his whole future ahead of him. Now Jared works at an Amazon warehouse moving boxes and will likely never work with computers again.

Though Jared excelled at solving puzzles, computer code issues, and math problems, he was not good at solving personal problems. One such problem was his addiction to pornography. His natural curiosity of all things, which make him a good learner and problem solver, worked to his detriment when he found online pornography. The rabbit hole goes deep for one who explores the dark web. At age 23 Jared found himself down the rabbit hole, and his curiosity about what could be found on the dark web led him to child pornography. The images download in large

batches.  You don't have to click and save each one.  It doesn't take long for one to download thousands of images with this bulk downloading.  Jared deleted them after looking at them, but it was too late.  His computer had been flagged.  He is now before the Court for sentencing.

Since his arrest, Jared has obtained the tools needed to understand and manage his pornography problem and to ultimately move past it.  He has a supportive family and access to individualized mental health treatment that can work with his Asperger's diagnosis.  If placed on supervised release, Jared can continue on the path he has already started.  Prison is not needed for Jared to be punished or be deterred.

His life as he knew it has been completely changed because of his choices.  He will never achieve the success he dreamed of in his chosen career, and the stigma of his conviction will follow him forever.  These outcomes are punishments and have deterred Jared from reoffending.  For these reasons, Jared respectfully asks this Court to sentence him to one day time-served, followed by lifetime supervised release, and a period of house arrest if the Court deems it appropriate.

### *Jared's Background & Circumstances*

Jared's childhood and teenage years were marked by his social anxiety.  His anxiety was so severe that while in high school, Jared had an Individualized Education Plan (IEP) that allowed him to leave classes early so that he did not have to encounter crowds of students in the hallways between classes.  Jared struggled to connect with his peers, and this caused his grades to suffer.  He also had to transfer schools several times which was very stressful for him.  Jared was bullied for his shyness and social anxiety.  Jared was struggling with depression and experiencing suicidal thoughts.[1]

---

[1] Jared still struggles with this mental health condition today and asks the Court consider it when determining a sentence. *See United States v. Polito*, (5th Cir. 2007) 2007 WL 313463 (unpub.); *United States v. Cockett*, 330 F.3d 706 (6th Cir. 2003); *United States v. Pallowick* 364 F.Supp.2d 923 (E.D. Wisc. 2005); *United States v. Carmona-Rodriguez*, 2005 WL 840464, 4 (S.D.N.Y., 2005); *United States v. Gray* 453 F.3d 1323 (11th Cir. 2006).

However, he found one outlet that he became truly passionate about: the Rubik's cube. Over the next several years, Jared became a master at solving Rubik's cubes. He can solve them in seconds, blindfolded, and underwater while holding his breath. He's competed in national competitions and even organized some local competitions on his own. Jared's love for problem solving had finally found a purpose.

 

He was then able to channel that love further into his college major of computer science. A student who once had a 0.9 grade point average (GPA) was now a top student in his class, ending up with a 4.0 GPA, graduating Summa Cum Laude, and talking about pursuing a master's degree.

In 2017, Jared was 21 years old, and he had been getting more and more comfortable with his peers and more grounded in his future career plans. But then, his family was uprooted by his parents' divorce. This divorce was much more complicated than some. Jared's mother came out as a lesbian and she then remarried. However, she remained living in the family home with her new wife, ex-husband (Jared's father) and Jared. The blended family is still together today.

This was a transition that caused significant stress for Jared.  This combined with the stressors of college life, his present mental health condition, and his undiagnosed developmental disorder all caused Jared to have coping issues, which ultimately led to his pornography addiction progressing.  Jared is not presenting these issues as excuses for his behavior, but in hopes of providing the Court with a fuller picture of his life at the time he began looking at child pornography.

### Circumstances of the Offense

While child pornography is not a "victimless" crime, many courts have called into question the strict application of the sentencing guidelines in a routine fashion and have instead advocated for emphasis to be placed on the factors noted in 18 U.S.C. § 3553(a).[2]  Possession of child pornography is the lesser of the child pornography offenses on the continuum of conduct with production being the highest.  One who possesses child pornography is considerably less culpable than one who produces or distributes the exploitative materials, and a possessor "is a marginal player in the overall child exploitation scheme."[3]

This sentiment has been embraced by the U.S. Sentencing Commission.  In June of 2021, the Commission released a report titled "Federal Sentencing of Child Pornography: Non-Production

---

[2] *See United States v. Beiermann*, 599 F. Supp. 2d 1087, 1095-96 (N.D. Iowa 2009), *See, e.g., United States v. R.V.*, 157 F. Supp. 3d 206, 243-250 (E.D.N.Y. 2016), *United States v. Munoz*, 2012 U.S. Dist. LEXIS 155050 (D. Minn., October 30, 2012), *United States v. Burns*, 2009 U.S. Dist. LEXIS 100642 (N.D. Ill., Oct. 27, 2009), *United States v. Baird*, 580 F. Supp. 2d 889, 892 (D. Neb. 2008); *United States v. Goldberg,* 2008 U.S. Dist. LEXIS 35723, 2008 WL 4542957, *6 (N.D. Ill. April 30, 2008); *United States v. Shipley,* 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008); *United States v. Hanson,* 561 F. Supp. 2d 1004, 1009-1011 (E.D. Wis. 2008); *United States v. Stern,* 590 F. Supp. 2d 945 (N.D. Ohio 2008); *United States v. Ontiveros,* 2008 U.S. Dist. LEXIS 58774, 2008 WL 2937539, *8 (E.D. Wis. July 24, 2008); *United States v. Grinbergs,* 2008 U.S. Dist. LEXIS 91712, 2008 WL 4191145, *5-*8 (D. Neb. Sept. 8, 2008); *United States v. Stults,* 2008 U.S. Dist. LEXIS 106344, 2008 WL 4277676, *4-*7 (D. Neb. Sept. 12, 2008); *United States v. Noxon,* 2008 U.S. Dist. LEXIS 87477, 2008 WL 4758583, *2 (D. Kan. Oct. 28, 2008); *United States v. Johnson,* 588 F. Supp. 2d 997, 2008 WL 5115047, *5-*6 (S.D. Iowa 2008); *United States v. Gellatly,* 2009 U.S. Dist. LEXIS 2693, 2009 WL 35166, *5-*7 (D. Neb. Jan. 5, 2009).
[3] *See United States v. Meysenburg,* No. 08-CR-361, 2009 U.S. Dist. LEXIS 82974, 2009 WL 2948554, at *8 (D. Neb. Sept. 11, 2009).

4

Offenses," which is an update to their previous "2012 Child Pornography Report."[4]  In the report, the Commission addressed findings they have made based on the data.[5]

The Commission has concluded that sentencing for non-production offenses should be revised to account for technological changes, emerging social science research about offender behavior, and variations in offender culpability and dangerousness.[6]  Specifically, the Commission recommends that instead of strict application of the guidelines, the key factors courts should look at are: 1) the **content** of the offender's child pornography collection and nature of the collecting behavior; 2) the offender's degree of involvement with other offenders in the internet **community** devoted to child pornography; and 3) whether the offender engaged in sexually abusive or exploitative **conduct** in addition to the pornography offense.[7]

With respect to content of the pornography found on Jared's devices and his "collecting behavior," the evidence supports that Jared would mass download material, but then delete it after feeling shame and guilt.  The forensic examination found that the images/videos were in unallocated or cache files which means that the files are either deleted or were only viewed, not saved, on the computer.

Jared has expressed remorse in that he would download in mass, then delete.  He was clearly remorseful during his police interview, being honest with the officers and getting teary-eyed when explaining what he had done.  This behavior demonstrates a remorseful mindset, as opposed to many pornography defendants who hoard or categorize the material.[8]  It is not

---

[4]U.S. SENT'G COMM'N Report available at:
https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (hereafter "Commission Report).
[5] Many of these points were made in the 2012 report, and the 2021 report reaffirms those findings.
[6] Commission Report, page 2 (echoing sentiments of the 2012 report).
[7] *Id*.
[8] *United States v. Parish*, 308 F.3d 1025 (9th Cir. 2022) (affirming district court eight-level downward departure during sentencing of child pornography defendant because, among other things, defendant only had images in his cache file).

uncommon to see child pornography cases where defendants have tens of thousands of images all meticulously saved.  That is not the case with Jared who felt shame when viewing the images and deleted them.

With respect to the "community" factor, there is no evidence here Jared was part of any internet community that discussed or traded child pornography.  There is no evidence he knowingly shared images with others.  No chats were located showing he was talking about trading pictures with others.  This was not a peer-to-peer file sharing case where Jared had been trading images.  Jared never intended for anyone to see any of the images he had found.  It is true that a foreign law enforcement agency flagged Jared's computer for accessing a website which distributed child pornography; however, Jared has no recollection of being on that website, and no evidence was found that he participated in any activity on that website specifically.

One of the things that makes possession of child pornography unique is that it is one of the only criminal offenses that can be committed entirely in the privacy of a person's own home with little to no involvement of others.  The rise of the Internet has had a dramatic impact on the availability of online pornography.  It removes the physical barriers that existed twenty or thirty years ago.  Pornography is no longer obtained in person and behind closed doors, which made it harder to find.  It is now readily available on the Internet.  The accessibility of online child pornography may also "disinhibit and desensitize" a viewer to the images."[9]  While this does not minimize the harm that locating and viewing child pornography does, it does demonstrate the challenge in weighing the offense conduct.  Possession of child pornography is not a crime of malice.  Most offenders simply don't appreciate the real-world consequences of their actions.

---

[9] Eric Griffin-Shelley, *Sex and Love Addicts, Who Sexually Offend: Two Cases of Online Use of Child Pornography*, 21 Sexual Addiction & Compulsivity: The J. of Treatment & Prevention 322, 323 (2014).

With respect to the "conduct" factor, the 2021 Report found 48% of receipt/possession defendants in FY 2019 engaged in "aggravating conduct" or "criminally sexually dangerous behavior," such as contact offenses, prior to or during the instant offense.  These statistics here show us many child pornographers engage in aggravating behaviors.  Here, there is nothing to suggest Jared engaged in sexually abusive or exploitative conduct.  There is no evidence that Jared touched any children inappropriately or tried to do so.

Jared does not exhibit aggravating conduct that warrants an extended or lengthy prison sentence.  Based on the key factors addressed by the Commission, Jared's content, community, and conduct does not fall into a greater category of concern.  Jared knows this does not excuse his offense.  However, these factors here do demonstrate that Jared's offense conduct does not rise to the level that warrants incarceration, and Jared asks the Court to look beyond the offense to the other relevant 3553(a) factors when assessing his sentence.

In 2019, Jared was only 23 years old.  Although Jared was legally an adult when he committed this offense, his brain was still catching up.  There is no switch that flicks on when someone turns eighteen, flipping his brain to now think like an adult.  Rather, it is an ongoing process, incomplete for most of us until age 25.  Until then, poor judgment, inability to plan or anticipate outcomes, and impulsivity are the norm.[10]   Scientific literature shows there is compelling evidence that the judicial system's longstanding principle of treating youth offenders differently than adult offenders is justified in part based on the unformed nature of the adolescent and teenage brain.[11]

---

[10] See, ABA, "Understanding the Adolescent Brain and Legal Culpability" available at available at https://www.americanbar.org/groups/public_interest/child_law/resources/child_law_practiceonline/child_law_practice/vol-34/august-2015/understanding-the-adolescent-brain-and-legal-culpability/
[11] See, e.g., National Institute of Health Publication 4929, The Teenage Brain: A Work In Progress (2008)).

While the Supreme Court has discussed persons under the age of eighteen, the same research shows that brain development is not complete until approximately age twenty-five.[12] Thus while Jared was committing the offense conduct, he suffered from much of the same immaturity and inability to make sound judgments that most teenagers do.  The very last part of the brain to be pruned and shaped to its adult dimensions is the prefrontal cortex, home of the so-called executive functions — planning, setting priorities, organizing thoughts, suppressing impulses, weighing the consequences of one's actions.[13]  Courts have previously considered a defendant's young age when determining what type and length of sentence are necessary.[14]  In sum, while Jared may be very smart, he was very immature.

### Non-Incarceration Punishments Jared will Continue to Endure

There are several consequences to this plea that demonstrate punishment and deterrence. Now, Jared is a convicted felon, and that conviction comes with the lifelong stigma of being a "sex offender."  The lifetime label of a sex offender has added consequence.  It is very difficult to find work as a convicted felon and ever harder for sex offenders.  The Defense asks the Court to consider this impact when assessing his request.

Like every person who has pled guilty to or been found guilty of possessing child pornography, Jared will have to live with this forever.  It will follow him through every life change, whether that be a new relationship, a move, a new job.  This is the reality.

---

[12] *See Roper v. Simmons,* 543 U.S. 551 569 (2005); Graham v. Florida, 560 U.S. 48 (2010); Miller v. Alabama, 132 S.Ct. 2455 (2012).

[13] Claudia Wallis, "What Makes Teens Tick," Time Magazine (Vol. 163 No. 19, May 10, 2004) available at https://deathpenaltyinfo.org/resources/publications-and-testimony/articles/what-makes-teens-tick

[14] *United States v Polito*, (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463 (unpub.) (where defendant convicted of possession of child pornography, district court's sentence of probation with one year house arrest reasonable in part because defendant was 18 at time of the offense "and very immature...and his age and mental condition prohibited him from acting rationally"); *United States v. Lurye*, No. 1:14-CR-37-TLS, 2016 WL 1567249 (N.D. Ind. Apr. 19, 2016) (downward variance in part because the defendant's age increased his likelihood to make significant changes to his life).

But for Jared, there are even more lifelong consequences. Jared was on his way to becoming an incredibly successful software engineer. He studied for years to get his degree and put in countless hours in extracurriculars and projects to make himself more marketable once he was out in the real world. Jared's career was not only going to provide him with financial stability, but with fulfillment.

As described above, Jared's passion for computers has been years in the making. Now, he will likely never be able to work in that field again. Courts have explained that loss of a career is a significant punishment and considered it when applying downward variances.[15]

Sex offender registration also serves as a deterrent and, in many ways, a punishment. Sex offenders are marked permanently. Where they live and work are on public maps that can be found online. Their vehicle information is public. If it becomes known that a sex offender lives in the area, there is an increased risk of harassment from the neighbors. No one wants them in their neighborhood. Even though a person's "debt" to society is paid after confinement, the public shaming will continue.

Registration comes with strict rules to promote deterrence. There are numerous rules about where one can live. In nicer communities, that radius is extended by ordinance to all but outlaw sex offenders from residing there. This will greatly limit Jared's housing options. There are rules about being in parks, participating in Halloween, and creating social media accounts. In some

---

[15] *United States v. Wachowiak* 412 F.Supp.2d 958 (E.D. Wisc. 2006) aff'd 496 F.3d 744 (7th Cir. 2007) (where 24 year old music student convicted of possessing child pornography, and where he is in treatment and low risk of recidivism, and strong support from family and community, court imposes significant downward variance in part because "the guidelines failed to account for the significant collateral consequences defendant suffered as a result of his conviction. His future career as a teacher was ruined, and he was compelled to resign as piano teacher of children and as a church musician. He will also be forced to live with the stigma of being a convicted sex offender); *United States v. Baird* 2008 WL 151258, (D.Neb. Jan. 11, 2008) (unpub.) (in child porn. case where downward variance imposed in part because "the defendant has already suffered serious consequences as a result of his actions, including loss of his military career); *United States v. Scott*, 503 F.Supp.2d 1097, 1103 (E.D.Wis.,2007) (downward variance imposed in part because defendant suffered significant collateral consequences in the probable loss of her job, which added to the punitiveness of her conviction).

states, it is a crime to be around a minor unless you are married to the child's parent.  While these laws perhaps promote some public good, it is Jared that must live with the rules hanging over his head, reminding him of his shame.

Supervised release also serves as deterrence.  It will be imposed for at least five years and up to life.  The supervision is strict, and the officers monitor and ensure compliance.  There are several resources and tactics that will be employed to make sure Jared follows the law.  No computer or monitored computer access, no contact with minors, restrictions of activities, regular polygraphs, and indefinite sex offender treatment are all staples of supervised release.  Jared will receive these conditions and they help meet the sentencing objectives without the need for lengthy incarceration.  Supervised release for child pornography offenders in this District is the longest, hardest, most time consuming and most expensive.  These hurdles should offset the need for lengthy incarceration.

Jared has strong family support that will help him overcome these challenges.  Family support is incredibly important for someone working towards getting their life back on track following release from incarceration.  Help from family lowers the risk of recidivism.[16] Given his family support, combined with the tools of supervised release, he will be able to continue on his path to rehabilitation.  Counsel has attached as exhibits character letters showing the support Jared has.

Given the effectiveness of conditions on supervised release, the Court has several tools at hand to monitor, deter, and assist Jared.  There are a wide range of outcomes possible, but

---

[16] See Shirley R. Klein et al., Inmate Family Functioning, 46 INT'L J. OFFENDER THERAPY & COMP. CRIMINOLOGY 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has been consistent across study populations, different periods, and different methodological procedures."); Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, Gender, Individuality and the Federal Sentencing Guidelines, 8 FED. SENT'G REP. 148 (1995) ("[T]he better family ties are maintained[,] the lower the recidivism rate,").

incarceration is not needed to send this young man the message.  A sentence which emphasizes conditions on release will have more value to Jared and society than a long, taxpayer-funded, prison sentence.

All these consequences of his plea promote justice by reflecting the seriousness of the offense and provide punishment and deterrence.  But by imposing a sentence that is "sufficient, but not greater than necessary," the Court will allow Jared to have a meaningful rehabilitation.  *See* 18 U.S.C. § 3553(a).

### Jared's Time Since Arrest

Just like he did when he was struggling in school, Jared has taken time since his arrest to understand the underlying reasons he possessed child pornography. His dedication towards rehabilitation has already begun and he has spent nine months working towards solving this complex problem.

In March of 2022, Jared started seeing Dr. Dean Rosen twice a month for individual psychotherapy.  These sessions have been devoted to digging deeper into Jared's feelings and background and have provided Jared with opportunities to open up, learn and grow.

Along with the psychotherapy sessions, Dr. Rosen also performed several assessments meant to evaluate Jared's ability to thrive in the community.[17] Dr. Rosen found that there is little in Jared's "history, interview, or psychological testing that would indicate he presents any particular risk of violent sexual offending or contact offenses if he is maintained in the community following sentencing." Further, Dr. Rosen believes that there is a "strong likelihood" that Jared will follow the rules of community supervision.

---

[17]  These assessments and Dr. Rosen's findings can be found in Exhibit 1.

Another one of the reasons why Jared did not previously have the right tools to manage his pornography addiction was that he had an undiagnosed developmental disorder.  After Jared began seeing Dr. Rosen, he was diagnosed with autism spectrum disorder (formerly known as Asperger's Syndrome).  The diagnosis has been important in helping Jared understand himself better.  Dr. Rosen explains in his report that people on the autism spectrum are generally "rule bound" and find structure and rules helpful because it allows them to know what to expect in any situation.[18] This will greatly benefit Jared while on supervised release, ensuring that he continues to follow all restrictions placed upon him. Courts have considered defendants' autism spectrum disorder diagnosis when granting a downward variance.[19]

Jared has been receiving excellent mental health treatment while on pretrial release. Removing him from that environment now when he has made significant progress could quickly disrupt that progress. Courts have considered this as potential for a major setback in treatment when determining a proper sentence.[20] Further, Jared has been on pretrial release for nine months

---

[18] *See* Ex. 1.

[19] *United States v. Michael,* 2018 U.S. App. LEXIS 33596 (8th Cir. 2018); *George v. United States*, 2020 U.S. Dist. LEXIS 139382 (D.C. Ala. 2020); *United States v. Ziska*, 302 Fed.Appx. 284 (6th Cir. 2015); *United States v. Mallatt*, 2013 U.S. Dist. LEXIS 168777 (U.S.D.N. 2013).

[20] *United States v. Stall* 581 F.3d 276 (6th Cir. 2009) (in child porn. case where Guidelines 57-65 months, court's sentence of 1 day in jail, 10 years supervised release, and one year house arrest, not unreasonable in part because of defendant's mental state, ongoing therapy, and unlikely chance of recidivism, and that imprisonment would interrupt course of treatment); *United v. Olhovsky* 562 F.3d 530 (3d Cir. 2009)(where defendant convicted of possession of porn., district court's below-guideline sentence of 72 months unreasonably high in part because the record did not reflect the reasons for the court's " believing that treatment in prison would "provide . . .correctional treatment in the most effective manner" [as required by 18 U.S.C. § 3553(a)(2)(D)] despite [treating psychologist's] opinion to the contrary" and that in prison defendant would "regress."); *United States v. Autery* 555 F.3d 864 (9th Cir. 2009)(where defendant convicted of poss. of porn. and where guidelines 41-51 months, court's sua sponte variance to probation not unreasonable in part because of district court's determination that incarceration "would undermine" defendant's rehabilitation and that "probation with psychiatric treatment was a more appropriate sentence" than incarceration); *United States v Polito*, (5th Cir. Jan. 31, 2007) 2007 WL 313463 (unpub.) (where defendant convicted of possession of child pornography, district court's sentence of probation with one year house arrest reasonable in part because "a term of imprisonment would interrupt Polito's mental health treatment").

and has not incurred a single violation.  Performance on pretrial release has also been considered by courts at sentencing.[21]

Additionally, one notable thing Jared did in preparation for his sentencing was request several character letters.  Many offenders who have pled guilty to crimes like possession child pornography try to keep their case as quiet as possible, not submitting character letters from those outside their immediate families.  Taking responsibility for one's actions in front of the court and to one's immediate family is a necessary step in this process.  But Jared took it a step further and owned up to his conduct to friends, colleagues, and respected mentors.  That takes courage, maturity, and demonstrates immense remorse.  Saying you are sorry is something you do to get past something, while remorse is genuine and can be demonstrated.  Jared has shown real remorse which in turn shows he is unlikely to ever be in this situation again.

### *The Realities of the BOP*

One important but sometimes overlooked factor when determining whether a prison sentence is necessary for a defendant is what their experience may be while in the BOP.  In general, people charged with offenses like possession of child pornography are more likely to be abused while in prison.[22] However, Jared is at an even greater risk.

Jared is five feet nine inches tall and weighs 120 pounds.  He has a slight build and youthful appearance, as can be noted in the above photographs.  His small stature, awkward demeanor, and autism spectrum disorder will create significant difficulties for him in the BOP.  Based on his

---

[21] *See United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (below guidelines sentence affirmed in part due to defendant's behavior while on a year-and-a-half pretrial release, which the district court found to be commendable, showing defendant is unlikely to reoffend); *United States v. Baker*, 502 F.3d 465 (6th Cir. 2007) (below guideline sentence of probation with one year house arrest proper in part because he behaved "exceedingly well" while under supervision of pretrial services).

[22] *United States v. Kelly*, 868 F.Supp.2d 1202, 1204 (D.N.M.,2012) (in child porn case, judge granted downward departure because psychiatrist testified "prison would have destructive and devastating effects" on the defendant "and would not be rehabilitating. "Indeed, because of the distorted and bizarre hierarchy of prison culture, Kelly may be subject to serious danger in prison.")

physical characteristics combined with the nature of his offense, he is likely more prone to being abused in prison and would struggle in a halfway house.

### *Comparative Cases*

While the Court will make its own decision on an appropriate sentence, it is worth noting that there are several pornography cases in the Eastern District of Missouri and Southern District of Illinois that have been resolved with favorable sentences when defendants have demonstrated that a variance is just, even in cases involve aggravating facts that are not present in this case.[23]

Additionally, according to the Commission's Judiciary Sentencing Information System (JSIN), in Fiscal Year 2017-2021 according to national data, three percent of offenders sentenced under § 2G2.2 with a Total Offense level of 28 and who were Criminal History Category I (like Jared) received probation.[24]  Defense argues that because of Jared's proactive treatment and demonstrated progress, when considering his mental health disorder, he is a top three percenter.  As such, the Court should consider affording him a chance at continued supervision in the community without the need for further incarceration.

---

[23] *United States v. Johnson*, 4:18-CR-564 AGF, guilty one count possession of child pornography and received time served with ten years supervised release with six months of home detention and 80 hours of community service.  The variance was given in that case due to relevant 3553(a) factors, including the defendant's positive psychosexual evaluation; *United States v. Okada*, case number, 4:14-CR-361 CDP, *United States v. Silies*, 4:16-CR-0099 JAR, in which both defendants received one-day time served with lifetime supervised release based on relevant 3553(a) factors; and *United States v. Samra*, 4:13-CR-11 CEJ, guilty of one count possession of child pornography given six month prison with ten years supervised release; *United States v. Dunwiddie*, 4:13-CR-11, guilty of two counts of possession of child pornography given one day credit for time served with lifetime supervised release; *See also United States v. McNair*, 3:15CR30111 SMY, where the defendant received five years' probation with forty hours of community service; and *United States v. Faulkner*, 3:15CR30121 SMY, where the defendant received five years' probation.

[24] Available at https://jsin.ussc.gov (§ 2G2.2 Total Offense level of 28, with Criminal History Category I).
Additionally, three percent of individuals at level 29, Criminal History Category I, receive probation, while one percent of individuals who are at level 30 receive probation.  Thus, even some offenders with higher guideline scores have been found to be worthy of probation.

### *Conclusion*

*"If you are curious, you'll find puzzles around you.  If you are determined, you will solve them."*  Erno Rubik

Jared has already started his journey to deeply understanding the complex problems that led him to be before this Court.  He has worked extremely hard while on pretrial release to learn how to manage and ultimately solve these problems.  Even the hardest problems have a solution.



Jared's lack of criminal history, the impact of the sentence on his employment prospects, the deterrence provided by registration/supervision, his rehabilitative potential, and his willingness to continue in therapy and treatment present compelling reasons why the requested sentence is appropriate.  He has great remorse for his actions and has the tools he needs to move past them. Since the case has been pending, he has learned greatly from this experience in therapy, and is on the right path at setting himself up for success once he is released.

WHEREFORE, for the reasons stated herein, Jared Diehl respectfully asks this Court to sentence him to one day time served, lifetime supervised release, and a period of home confinement if the Court feels it necessary and grant any further relief the Court deems just or proper.

Respectfully submitted,

FRANK, JUENGEL & RADEFELD,
ATTORNEYS AT LAW, P.C.


By */s/ Joseph W. Flees*
    JOSEPH W. FLEES (#60872MO)
    Counsel for Defendant
    7710 Carondelet Avenue, Suite 350
    Clayton, Missouri 63105
    (314) 725-7777
    jflees@fjrdefense.com


## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Jillian Anderson
Asst. United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

    */s/ Joseph W. Flees*
    JOSEPH W. FLEES

16